UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MIKE DALLY,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>　　　　　Defendant. | 4:23-CV-04175-RAL<br><br><br>OPINION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff Mike Dally sued his homeowner's insurance carrier State Auto Property and Casualty Insurance Company ("State Auto") after State Auto's final coverage determination regarding hailstorms that damaged Dally's property. Dally's Complaint asserts claims for breach of contract and insurance bad faith, seeking compensatory and punitive damages and attorney's fees. Dally filed a Motion for Partial Summary Judgment, Doc. 19, asking for a ruling that State Auto is liable for breach of the insurance contract and bad faith for refusal to pay Dally's claim. For the reasons explained, this Court denies Dally's Motion for Partial Summary Judgement.

I.    Facts

This Opinion and Order makes no findings of fact but draws the facts from portions of Dally's statement of material facts that were undisputed and from other record materials. Docs. 20, 21, 22, 24, 25, 26. This Court views the facts in the light most favorable to State Auto as the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).

1

State Auto issued a homeowner's policy to Dally insuring his house on South Kathryn Avenue in Sioux Falls. Doc. 21-1. The policy covered "direct physical loss" subject to exclusions including wear and tear, marring, deterioration, faulty workmanship, and intentional damage. Doc. 22 ¶ 3; Doc. 25 ¶ 3; Doc. 21-1 at 34–35. The policy had a $1,000 deductible. Doc. 22 ¶ 5; Doc. 21-1 at 4; Doc. 25 ¶ 5.

During the policy period around the end of May 2022, a series of hailstorms occurred in Sioux Falls. Doc. 21-2 at 13. On May 30, 2022, Dally filed a claim with State Auto for damage to his home from the May 2022 hailstorms, particularly one on May 29, 2022, where he believed two- and two-and-a-half-inch hail struck his home. Doc. 22 ¶¶ 7–9. State Auto retained an independent adjuster, Tim Konderla, who visited Dally's property in early June 2022. Id. ¶¶ 11–12. Konderla viewed and photographed Dally's property and provided State Auto with a report. Id. at 14–53. Konderla's report evaluated hail damage to shingles, vents, and gutters on the roof. Id. at 23–33, 36, 41, 44. Konderla concluded that there was "significant hail damage to all slopes and a full replacement [of the roof] is recommended." Id. at 7. Konderla's inspection was not limited to the roof, and he did not find any hail damage to other parts of Dally's property. Id. at 34–43. Konderla created a photographic log to document his findings in his report. Id. at 14–44.

State Auto found Konderla's photographic log insufficient to support his conclusion that the entire roof needed to be replaced. Doc. 25 at 10–11; Doc. 26-4 at 2, 6–7. State Auto's desk adjuster Carey Hubbard discussed the lack of documentation with his manager Brent Collier who recommended sending an engineer to the property to confirm that the roof needed to be replaced. Doc. 25 at 11; Doc. 26-4 at 6–7. According to State Auto, Dally, a retired insurance adjuster himself, first accused State Auto of bad faith when State Auto communicated that it was hiring an engineer to inspect the roof of Dally's home. Doc. 25 at 11; Doc. 26-2 at 2–3; Doc. 26-8.

State Auto retained Lance LeTellier, an engineer employed by Donan Engineering, to inspect Dally's property. Doc. 26-12 at 2. On July 8, 2022, LeTellier visited and viewed Dally's property. Id. LeTellier's report contained several "Key Concepts" including "Collateral Indicators of Hail Impact," "Manmade Damage,"[1] and "Nail Pops."[2] Id. at 10–15. LeTellier used these concepts to distinguish the damage caused by the hailstorms from other activities. Id. at 15–16. LeTellier, based on collateral indicators, believed that hail up to one-and-one-quarter inch had fallen at Dally's property, which the shingles on Dally's roof were designed to withstand. Id. at 15. LeTellier's report concluded that four shingles were damaged by the May 2022 hail, which could be spot repaired, and that the roof had sustained historical wind damage and manmade damage as well. Id. at 16.

On August 4, 2022, State Auto wrote to Dally, stating:

Specifically, we can only accept coverage for the direct physical damage from a covered peril and for it to have been caused by a peril occurring during the policy period and not specifically excluded in the policy. Our initial inspector's findings were not found to be supported so an engineer was assigned to get a detailed account of the property and findings. The inspection by the structural engineer of

---

[1] LeTellier's report detailed inadvertent manmade damage:

Human activities occasionally mar or tear roof shingles and can easily be mistaken for hail- or weather-related damage. Shingle installers and other workers may drop or drag equipment, materials, or even other shingles across the roof, scarring or tearing the shingles. Foot scuffing is common along the bottom edge of the shingles and in main access pathways on the roof. Foot scuffing is particularly common along ridges and valleys of the steeper and more difficult-to-access portions of a roof.

Doc. 26-12 at 14.

[2] LeTellier's report defined "nail pops" as:

The outward progression of a nail fastening a shingle to the roof deck or fastening the decking to the roof framing is commonly referred to as a "nail pop." Nail pops can uplift, puncture, and/or otherwise blemish an overlying shingle. Nail pops can result in water-intrusion pathways through the building envelope.

Doc. 26-12 at 15.

3

> the property found the roof to be aged from typical wear and tear with a shingle damage count of 4. All other damage was found to be historical, manmade and age-related deterioration.

Doc. 26-14 at 1–2. State Auto also sent provisions of the insurance policy that exclude coverage for "(a) [w]ear and tear, marring, deterioration; [and] (b) [m]echanical breakdown" in their letter. Id. at 2.

After the partial denial letter, Dally hired his own independent adjuster, Brian Anderson of Good Faith Public Adjusting, to evaluate hail damage to the home.[3] Doc. 26-15. Anderson inspected Dally's property and used a RoofHawk Artificial Intelligence drone to find and document damage to Dally's roof. Doc. 26-16 at 1. Anderson concluded that Dally's roof was "totaled," which he believed was consistent with damage to neighboring properties. Id. Anderson sent his report to State Auto and requested State Auto to conduct an ITEL Report, which takes a shingle from the roof to determine what shingles were used and if they are still available on the market. Doc. 26-15 at 1.

On September 22, 2022, State Auto sent Dallas Strasser to Dally's home to retrieve a shingle for the ITEL report. Doc. 22 ¶¶ 28–29; Doc. 25 ¶¶ 28–29. Strasser was met by Dally and Anderson when he arrived. Doc. 26-21 at 8. State Auto contends that Strasser was hired only to remove a shingle for the ITEL Report, but Strasser was shown damage and told to photograph it by Anderson. Doc. 24 at 11; Doc. 25 at 15. Dally believes that Strasser agreed with Anderson about the nature and extent of roof damage, but State Auto characterizes Strasser's findings as containing "unsolicited documentation of the representations of [Dally's] public adjuster, not the

---

[3] State Auto is critical of Dally's actions noting that Dally had hired an out-of-state entity, Level 7 Remediation, which then recommended Montana adjuster and former MMA fighter Anderson who was inexperienced as an adjuster and is no longer in the business. Doc. 25 at 11–12; Doc. 26-10; Doc 26-11 at 4–7. Dally is at least equally critical of the claims handling of State Auto. Who is right about the nature and extent of damage and proper adjustment of the claim is an issue for trial.

4

findings of Mr. Strasser himself, who was retained for the limited purpose of securing a roofing sample."[4] Doc. 25 at 15–16; Doc. 26-21 at 8.

On October 9, 2022, LeTellier reviewed and provided an assessment of the RoofHawk Report; LeTellier concluded that the report was not substantiated with comprehensive information regarding weather data, collateral indicators, or any other cause for the damage it detected on the roof. Doc. 26-17 at 2. Anderson sent another letter with line-item costs claiming additional damage to the siding, deck, soffits, and stone veneer on November 16, 2022. Doc. 26-22. LeTellier reviewed and provided an assessment of Anderson's letter, deeming the additional communication not to change his ultimate position. Doc. 26-23 at 6. LeTellier noted claims and evidence of cosmetic dents on all sides of the house, indicating they were caused by multiple events; other damage reported was not caused by hail or wind with age-related deterioration and mechanical damage found as well. Id. at 7. State Auto then emailed Dally that the damage did not exceed Dally's $1,000 deductible. Doc. 26-25 at 1. State Auto's assertion that the claim did not exceed the deductible was in error as State Auto previously assessed the covered damage at $1,873.69. Id. State Auto later tendered payment in the amount of $873.69 to Dally for damage State Auto deemed attributable to the May 2022 hailstorms. Id. at 3.

On March 6, 2023, Dally submitted a Sworn Statement in Proof of Loss seeking $158,192.77 in repair costs.[5] Doc. 26-26. On March 9, 2023, State Auto sent a Rejection to Proof

---

[4] State Auto also notes that Strasser did not secure a shingle on September 22, 2022, but had to return to Dally's property the next day to retrieve a shingle for the ITEL Report "because of the unplanned tour of the property." Doc. 24 at 11 n.9; Doc. 26-11 at 14.

[5] Dally previously had secured an estimate of $26,226 from a local contractor for roof and gutter replacement. Doc. 26-27 at 2. State Auto also points out a text exchange between Dally and Anderson in which Anderson indicated that he hoped Hubbard "s**ts his pants" when he saw the Proof of Loss Statement. Doc. 26-28. Anderson testified that payment for his services was contingency based, meaning the more he can recover for Dally, the more he gets paid. Doc. 26-11 at 8–9.

5

of Loss and Partial Denial to Dally outlining their rejection of his Sworn Statement in Proof of Loss relying on LeTellier's work. Doc. 26-30. The letter again noted the reason for denial including multiple events occurring in the area both before and after the event and damage that was not attributable to hail or wind. Id. at 2–3.

Dally then filed this lawsuit asserting claims for breach of contract and insurance bad faith. Doc. 1 at 4–5. Dally has now moved for partial summary judgment seeking to establish State Auto's liability under the contract and for insurance bad faith. Doc. 19. Dally maintains that LeTellier is not applying the policy language at all, let alone correctly and that State Auto is ignoring the conclusion of its own independent adjuster Konderla in using LeTellier's misapplication of the policy to deny coverage.

## II. Analysis

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A material fact is one that might affect the outcome of the case." Bruhn Farms Joint Venture v. Fireman's Fund Inc. Co., 823 F.3d 1161, 1165 (8th Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Gibson v. Am. Greetings Corp., 670 F.3d 844 (8th Cir. 2012) (quoting Anderson, 477 U.S. at 252).

The nonmoving party must establish that a material fact is genuinely disputed by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); see also Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012) (citing Anderson, 477 U.S. at 256). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials" in their pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Gacek, 666 F.3d at 1145–46 (citing Anderson, 477 U.S. at 256). In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Gibson, 670 F.3d at 853 (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).

### B. Count 1: Breach of Contract

South Dakota law governs the claims in this diversity case involving a dispute between a South Dakota homeowner and his non-South Dakota insurer over a policy issued to cover property in South Dakota. See Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012) ("State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship.") The parties agree South Dakota law governs. In South Dakota, "[a]n action for breach of contract requires proof of an enforceable promise, its breach, and damages." Stromberger Farms, Inc. v. Johnson, 942 N.W.2d 249, 262 (S.D. 2020) (citations omitted). "A breach of contract is defined as a violation of a contractual obligation, either by failing to perform one's own promise or by interfering with another party's performance." Weitzel v. Sioux Valley Heart Partners, 714 N.W.2d 884, 894 (S.D. 2006) (cleaned up and citation omitted). "Whether a contract has been breached is a pure question of fact for the trier of fact to resolve." Id.

Dally contends that State Auto breached the insurance contract by failing to pay for cosmetic damage to his property from the May 2022 hailstorms. Doc. 20 at 21–23. Dally argues that the insurance contract covers cosmetic damage—a fact that is not disputed by State Auto as long as there is no applicable exclusion—and that State Auto failed to pay for the full extent of the damage because LeTellier ignored cosmetic damage, thereby breaching the contract. Id. at 21–22. Dally points to Konderla's report which stated, "a full replacement is recommended" to support his assertion that State Auto did not pay for compensable damage. Id. at 22. Dally further contends that State Auto has never pointed to "exclusionary language that would remove coverage for the cosmetic damage to [Dally]'s house." Id.

State Auto contends that it did not breach the contract because it paid for the portion of Dally's claim that it determined was attributable to the May 2022 hailstorms based on LeTellier's work. Doc. 24 at 13–14. State Auto argues that LeTellier's reports account for the various cosmetic imperfections Dally suggests State Auto is ignoring. Id. State Auto disputes the cause of these damages by claiming they occurred outside the policy period or were excluded from coverage. Id. at 16. State Auto asserts that its denials throughout the claim process have pointed to applicable exclusions including "[w]ear and tear, marring, deterioration; [m]echanical breakdown, latent defect, inherent vice; [and] [i]ntentional [l]oss." Id. at 18.

The homeowner's policy of course is an enforceable promise, a binding contract. The insurance contract provides in relevant part:

> SECTION I – PERILS INSURED AGAINST
> A. Coverage A – Dwelling And Coverage B – Other Structures
>     1. We insure against direct physical loss to property described in Coverages A and B.
>     2. We do not insure, however, for loss:
>         a. Excluded under Section I – Exclusions;
>         . . . .
>         c. Caused by:

8

> . . . .
> (6) Any of the following:
> > (a) Wear and tear, marring, deterioration;
> > (b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;
>
> . . . .
> SECTION I – EXCLUSIONS
> . . . .
> B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.
> > . . . .
> > 3. Faulty, inadequate or defective:
> > > a. Planning, zoning, development, surveying, siting;
> > > b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> > > c. Materials used in repair, construction, renovation or remodeling; or
> > > d. Maintenance;
> > > of part or all of any property whether on or off the "residence premises".

Doc. 21-1 at 31–32, 34–35.

This case does not turn on interpretation of policy language. Dally does not argue that an ambiguity exists for this Court to resolve against the drafter State Auto. See Auto-Owners Ins. Co. v. Hansen Hous., Inc., 604 N.W.2d 504, 509 (S.D. 2000) ("If the terms of an insurance contract are susceptible to different interpretations, we adopt the interpretation most favorable to the insured."). Hail can cause a "direct physical loss" to the insured property, and State Auto does not dispute that. Dally frames as the legal issue on summary judgment whether cosmetic damage is a covered loss, but State Auto does not dispute that the contract covers cosmetic damage not otherwise excluded. Doc. 24 at 1. State Auto's denial of coverage was based upon the finding that the claimed damage was not sustained as a result of the hailstorms in May 2022. Id. at 13–14.

A jury may well agree with Dally that the damage was attributable to the hailstorms and covered by the policy. After all, Konderla, the original adjuster sent by State Auto, seemed to think so and Dally has presented evidence suggesting it was. See Magner v. Brinkman, 883 N.W.2d 74, 82 (S.D. 2016) ("Fact finders are free to reasonably accept or reject all, part, or none of an expert's opinion." (citation omitted)). But on summary judgment, this Court must take the facts in the light most favorable to the non-movant State Auto. Based on LeTellier's reports, State Auto denied the bulk of Dally's claim. The propriety of that denial is a factual issue for a jury, not one that is proper for this Court to decide on a motion for summary judgment. See Lead GHR Enters., Inc. v. Am. States Ins., 369 F. Supp. 3d 909, 921 (D.S.D. 2019) ("The court next finds that the parties' competing causation theories present a genuine dispute of material fact that cannot be resolved through summary judgment."); Gregerson v. Farm Bureau Prop. and Cas. Ins., 462 F. Supp. 3d 952, 964 (D.S.D. 2020) ("[A] jury must determine whether defendant could reasonably have relied on this exclusion in denying the [insureds]' claim.") Therefore, summary judgment is denied on the breach of contract claim.

### C. Count 3: Insurance Bad Faith Claim

Dally characterizes the claim in Count 3 of his Complaint as one for "Tortious Breach of Duty of Good Faith and Fair Dealing," Doc. 1 at 5, but it is truly a claim for insurance bad faith. To prevail on a claim for insurance bad faith under South Dakota law, the plaintiff must show (1) an absence of a reasonable basis for denial of policy benefits; and (2) knowledge or a reckless disregard of the lack of a reasonable basis for the denial. Phen v. Progressive N. Ins. Co., 672 N.W.2d 52, 59 (S.D. 2003). Despite the phrasing of this test, first-party insurance bad faith claims in South Dakota "can extend to situations beyond mere denial of policy benefits." Dakota, Minn. & E. R.R. Corp v. Acuity, 771 N.W.2d 623, 629 (S.D. 2009) (citation omitted). First-party

insurance bad faith under South Dakota law is an intentional tort that "typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured." Hein v. Acuity, 731 N.W.2d 231, 235 (S.D. 2007). "A bad faith claim in South Dakota may be based on a failure to comply with a duty under the insurance contract, but still must involve an insurance company consciously engaging in wrongdoing." Anderson v. W. Nat'l Mut. Ins. Co., 857 F. Supp. 2d 896, 904 (D.S.D. 2012) (cleaned up and citations omitted).

An insurer has a reasonable basis for denying benefits—and therefore cannot be held liable for bad faith—if the claim is "fairly debatable" in either law or fact. Dakota, Minn. & E. R.R., 771 N.W.2d at 630 ("If an insured's claim is fairly debatable . . . an insurer cannot be said to have denied the claim in bad faith." (citation omitted)). The "fairly debatable" standard focuses "on the existence of a debatable issue, not on which party was correct." Id. (citation omitted). Thus, an insurer is not guilty of bad faith simply because its decision to deny benefits was mistaken. Id. Whether an insurer acted in bad faith is "determined based upon the facts and law available to the insurer at the time it made the decision to deny coverage." Id. at 629 (cleaned up and citation omitted).

Dally contends that since State Auto knew of its obligation to pay for cosmetic damages, State Auto failed to comply with a duty under the insurance contract by failing to pay for those damages. Doc. 20 at 23. Dally argues that State Auto adopted its own definition of "damage" and intentionally left out cosmetic damage, thereby abandoning its contractual commitments. Id. State Auto argues that its denial was based upon an investigation conducted by their forensic engineering expert, which found most of Dally's alleged damage not attributable to the May 2022 hailstorms. Doc. 24 at 19.

As explained above, State Auto investigated the matter hiring an adjuster to evaluate the property and then an engineer when it deemed the adjuster's work not to support roof replacement on its own. State Auto denied coverage for the bulk of Dally's claim based on its forensic engineering expert attributing the denting and other imperfections to matters excluded under the policy and events outside the policy period. This Court, as explained above, cannot grant summary judgment on Dally's breach-of-contract claim and thus cannot determine as a matter of law that State Auto's denial of the bulk of the claim lacked a reasonable basis. Which party is right on the existence of coverage turns on the resolution of a question of fact. Genuine issues of material fact remain for a jury to determine on whether State Auto's handling and denial of Dally's claim constitute bad faith. Summary judgment is denied on Count 3 for insurance bad faith.

### III. Conclusion and Order

For the reasons explained above, it is

ORDERED that Dally's Motion for Partial Summary Judgment, Doc. 19, is denied.

DATED this 16th day of October, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE