UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MIKE DALLY,<br><br>Plaintiff,<br><br>vs.<br><br>STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>Defendant. | 4:23-CV-04175-RAL<br><br>OPINION AND ORDER ON MOTIONS FOR ATTORNEY'S FEES AND INTEREST |

Plaintiff Mike Dally sued his homeowner's insurance carrier Defendant State Auto Property and Casualty Insurance Company ("State Auto") after State Auto's final coverage determination following a hailstorm that damaged Dally's home. Dally asserted claims for breach of contract and insurance bad faith, seeking compensatory damages, punitive damages, and attorney's fees. After a four-day trial in May 2026, the jury returned a verdict in favor of Dally, awarding him $25,000 in damages for State Auto's breach of contract as well as $50,000 in damages for pecuniary loss and $100,000 in mental and emotional damages for State Auto's bad faith, resulting in a total of $175,000 in damages. Doc. 77. The trial then went to a second phase concerning punitive damages, where the jury found in favor of State Auto. Doc. 81. Dally now moves for attorney's fees, Doc. 88, and interest on the $50,000 compensatory damages award for bad faith, Doc. 90.

## I. Facts from the Jury Trial

Mike Dally in 2022 owned and lived in a home on South Kathryn Avenue, in Sioux Falls, South Dakota. Trial Tr. vol. 2, 151:13, May 27, 2026. On May 29, 2022, Dally woke in the middle of the night from loud noises and observed that it was hailing outside. Id. at 151:22–152:2. At the time, Dally held a "Homeowner 3" insurance policy with State Auto. Id. at 151:15–20, Doc. 85 at Trial Ex. 1. A Homeowner 3 insurance policy is a "replacement cost policy" where the policyholder is entitled to the cost of replacement for damages to the insured home caused by a covered event. Doc. 85 at Trial Ex. 1; Trial Tr. vol. 1, 43:5, 43:13–14, May 26, 2027. Following the May 29 storm, Dally noticed that some shingles had blown off the south side of his roof and reported to State Auto that his roof had been damaged by rain, hail, and wind. Trial Tr. vol. 2, 152:3–15.

Carey Hubbard, desk adjustor at State Auto, received Dally's claim. To assess damage to Dally's home, Hubbard hired an independent adjustor, Tim Konderla. Trial Tr. vol. 1, 52:21. Konderla visited Dally's property in early June to inspect the damage to Dally's roof, take photos, and generate a report. Dally testified that Konderla said Dally's roof was "shot" and the home would likely require a full roof replacement. Trial Tr. vol. 2, 155:8–13. Konderla acknowledged that he may have said that all slopes of Dally's roof sustained hail damage and that the damage was severe.[1] Doc. 46-2 at 6 (Konderla Dep. 17:2–7, Feb. 7, 2025). Dally personally patched where shingles had blown off on the south side of the house and obtained estimates for a roof replacement after Konderla's visit. Trial Tr. vol. 2, 155:14–21.

Hubbard received Konderla's 31-page report soon after Konderla's visit to Dally's property. Trial Tr. vol. 1, 54:9–11; Doc. 85 at Trial Ex. 2. Upon viewing Konderla's photos, Hubbard deemed Konderla's report insufficient to support the position that a full roof replacement

[1] Konderla testified via video deposition at trial.

was necessary or to support Konderla's finding of hail damage on all slopes of the roof. Trial Tr. vol. 1, 55:15–17, 117:16. Hubbard informed State Auto management about his concerns with the report's sufficiency and received authorization to hire an independent engineer to perform a second inspection of Dally's home. Id. at 62:18–25. Frustrated with this decision, Dally repeatedly requested a copy of Konderla's report. Trial Tr. vol. 2, 156:8–9. Hubbard repeatedly refused Dally's request,[2] informing Dally that he could not release the report at any point during the pendency of the claim. Trial Tr. vol. 1, 58:6–18. Hubbard also informed Dally in writing that the independent engineer's report would be the "sole decision on whether there are or are not damages" relied upon for determining coverage. Doc. 85 at Trial Ex. 3. Hubbard, however, admitted that the engineer's report was not in fact the sole decision and that the engineer was not provided a copy of the policy language on which the existence of coverage turned. Trial Tr. vol. 1, 65:11–66:7.

State Auto hired engineer Lance LeTellier of Donan Engineering to inspect Dally's property for damage caused by the May 29th storm. Id. at 65:8–9. LeTellier visited Dally's property in July of 2022 and found limited non-functional damage to shingles and denting of soft metals and thought that spot repair including replacement of as few as four shingles was feasible. Id. at 84:3–11; Doc. 85 at Trial Ex. 4 at 16. Hubbard testified that LeTellier's report was the "cream of the crop," as it held "the strongest detail of information" coming from a "forensic damage expert." Trial Tr. vol. 1 at 122:5–11. Based on LeTellier's report, State Auto deemed Dally's covered damages to be $1,873. Id. at 79:15–16.

[2] Dally recalled asking eight times for Konderla's report and being refused every time. Trial Tr. vol. 2, 156:8–9. Hubard recalled Dally asking three plus times and declined to provide it because management would not permit its release during the investigation and Hubbard believed it would be false support for Dally's claim. Trial Tr. vol. 1 at 58:4–25, 61:9.

Despite Dally's deductible being $1,000 and State Auto believing damages to be $1,873, State Auto sent a damage-below-deductible letter to Dally on August 4, 2022, denying payment on the claim. Doc. 85 at Trial Exs. 8, 15. State Auto sent Dally the LeTellier report but not the Konderla report at that time. State Auto later recognized its mistake and acknowledged owing Dally $873. State Auto did not tender payment of the $873 until seven months later, in February of 2023. Trial Tr. vol. 1, 79:23; Doc. 85 at Trial Ex. 13

Dally testified that he was experiencing financial stress following his wife's long illness and death from ALS, which was compounded by State Auto's denial of coverage. Trial Tr. vol. 2, 163:8–164:17. Dally talked with roofers about the need and cost of roof replacement, as there were roofers working to replace roofs in his neighborhood. Id. at 162:15–20. He received from one of the roofers a suggestion to contact a public adjustor named Brandon Anderson, whom Dally then hired. Id. at 168:17–25. Anderson described his public adjustor role as advocating on behalf of insurance policyholders who feel their claims were wrongfully denied or undervalued. Id. at 236:25–237:4. Anderson visited Dally's property, took photos, ran tests, pulled meteorological reports, and eventually complied his findings into a 140 page report, estimating the total amount of damages on Dally's property from the hailstorm to be $158,192.77. Doc. 85 at Trial Ex. 14. Anderson was to be compensated based on a percentage of what Dally recovered. Trial Tr. vol. 2, 270:11–23. Anderson sent his report to Hubbard for consideration, and Hubbard responded that State Auto planned to rely solely on LeTellier's report in making a coverage decision on Dally's claim. Id. at 250:24, 252:5–6. LeTellier was highly critical of the Anderson findings, testifying to why and how Anderson had inflated the claim. Trial Tr. vol. 3, 393:19–407:6, May 28, 2026.

Dally's insurance expert Clint Schlinke testified that State Auto had issued an all-risk policy covering cosmetic damage and that State Auto's engineer had applied a higher and different

standard focused on functional damage of the roof. Trial Tr. vol. 2, 316:24–317:8, 317:12–24. Schlinke was critical of State Auto for withholding Konderla's report and not sending Konderla back to better document his initial findings. Id. at 321:14–22, 320:9–14. State Auto hired its own expert adjuster Eric Larson who testified that he reviewed the file and thought State Auto handled the claim appropriately. Trial Tr. vol. 3, 444:8–20.

Dally ultimately replaced the damaged shingles at his own expense of between $22,000 and $23,000. Trial Tr. vol. 2 at 176:15–23. When Dally renewed his policy with State Auto the following year, his yearly premium increased from $1,300 to $5,000. Id. at 182:23–183:6.

The matter eventually went to trial, and the verdict form asked the jury: (1) whether State Auto breached their insurance contract with Dally, and, if so, the amount of damages attributable to the breach and the date such damages were sustained; and (2) if State Auto breached the contract, whether State Auto committed bad faith in its handling of Dally's claim, and, if so, Dally's resulting pecuniary loss (other than the contract damages) and mental and emotional damages. See Doc. 76 at 19–20. During jury deliberations, the jury sent a note inquiring about the estimated amount lawyers make per hour, and whether either party had mentioned the amount of attorney hours spent on the case. Doc. 72. This Court responded to the jury note by informing the jurors that "[t]he amount lawyers make per hour and how much each side spent on lawyers was not evidence in the case" and that "[y]ou may not include in any damage award any amount for attorney's fees." Doc. 73.

The jury returned a verdict in favor of Dally on both claims. Doc. 77. The jury found that Dally sustained $25,000 in breach of contract damages on March 9, 2023. Id. at 1. On the bad faith claim, the jury awarded Dally $50,000 in pecuniary losses and $100,000 in mental and emotional damages. Id. at 2. Because the jury found in favor of Dally, the trial then went to a

second phase addressing punitive damages. On that issue, the jury found in favor of State Auto, declining to award any amount of punitive damage against State Auto. Doc. 81. This Court entered a partial judgment on jury verdict, entering the total verdict amount of $175,000 for Dally, "with prejudgment interest from March 9, 2023, on $25,000 of that amount." Doc. 87 at 1. This Court also ordered Dally to submit by motion, affidavit, and brief any request he has for attorney fees under SDCL § 58-12-3[3] and ordered that the parties cooperate to calculate the proposed prejudgment interest. Id. at 2.

## II. Motion for Attorney's Fees

Dally moved for attorney's fees, seeking a sum of $98,860.00, plus sales tax, post-judgment interest, and any future fees to be incurred. Doc. 88. In support of the motion, Dally attached four documents: (1) a memorandum in support, Doc. 88-1; (2) the affidavit of Seamus Culhane, Doc. 88-2, (3) an exhibit outlining the time Culhane spent on the matter, Doc. 88-3; and (4) a declaration—written by a different attorney in support of attorney's fees sought in a different matter under 42 U.S.C. § 1988(b)—in support of his claims for an hourly rate of $810, Doc. 88-4. Dally argues he is entitled to attorney's fees under SDCL § 58-12-3 because State Auto's refusal to pay was unreasonable or vexatious. Doc. 88-1 at 6–9. Dally points to various State Auto actions, including its consistent claim that only LeTellier's report would be used to make the coverage decision, refusal to disclose information in response to Dally's requests regarding his claim, ultimate coverage position inconsistent with Dally's policy, and delay in paying Dally even the $873 State Auto admitted it owed him. Id. at 3–8. Dally also argues that this Court should give weight to the jury's finding that State Auto acted in bad faith. Id. at 5 ("A finding of bad faith is not necessary in order for attorneys' fees to be awarded. . .[t]he same misconduct that resulted

[3] South Dakota law provides the substantive, non-procedural law in this diversity jurisdiction case.

in a finding of bad faith also supports an award for attorneys' fees." (internal citation omitted)). Dally further asserts that his request for $98,860 is reasonable, which he calculated by multiplying "half (1/2) of the estimated time spent (121.05 hours) times the most similar, recent rate for other lead counsel type litigators in Sioux Falls ($810)." Id. at 9.

State Auto opposes Dally's motion. State Auto argues that its ultimate coverage decision and refusal to pay—despite incorrect—was not vexatious or without reasonable cause. Doc. 94 at 5. State Auto asserts that the evidence at trial and the jury's damages award supports State Auto's decisions to demand more exacting proof of damage after receiving Konderla's photos and to reject Anderson's report. Id. at 5–6. In the alternative, State Auto argues that Dally's requested attorney's fees are unreasonable and should be reduced because this matter presented a simple, single-question dispute over claimed damage under an insurance policy, and that the prevailing rate for a South Dakota attorney in such a case ranges from $250 to $300 per hour. Id. at 6–16.

In South Dakota, an insured may recover attorney's fees in an action against an insurer who "has refused to pay the full amount of such loss, and. . . such refusal is vexatious or without reasonable cause." SDCL § 58-12-3. The statute's "obvious objective. . . is to discourage contesting insurance coverage and to reimburse an insured for any reasonable attorney's fees necessarily incurred in defending or enforcing a valid insurance contract right." Tripp v. W. Nat'l Mut. Ins., 664 F.3d 1200, 1205 (8th Cir. 2011) (quoting All Nation Ins. Co. v. Brown, 344 N.W.2d 493, 494 (S.D. 1984)). Thus, SDCL § 58-12-3 "must be given a liberal construction with a view to effect its objects and to promote justice." Id. (cleaned up and quotations omitted). Under SDCL § 58-12-3, a plaintiff can recover attorney's fees for a breach of contract claim but not for a bad faith claim. Kirchoff v. Am. Cas. Co., of Reading, Pa., 997 F.2d 401, 406–07 (8th Cir. 1993); Brooks v. Milbank Ins., 605 N.W.2d 173, 179–80 (S.D. 2000) (limiting an award of fees under §

58-12-3 to those attributable to an insured's contract claim "and not those fees directly attributable to the tort action of first party bad faith refusal to pay"). Before it can award attorney's fees, this Court must determine three things: (1) whether the insurance company refused to pay the full amount of the loss, (2) whether that refusal was vexatious or without reasonable cause, and (3) a reasonable charge of attorney's fees for the work performed to enforce the insurance claim. Biegler v. Am. Fam. Mut. Ins., 621 N.W.2d 592, 606 (S.D. 2001).

First, State Auto plainly refused to pay the full amount of Dally's loss. The jury found that Dally's loss from the breach of contract claim was $25,000. Doc. 77 at 1. State Auto initially denied coverage by issuing a damage-below-deductible letter when State Auto took the position that it owed Dally $1,873, which it mistakenly said was less than Dally's $1,000 deductible. Later realizing its error in describing the claim as below the deductible, State Auto did not pay Dally the $873 until over six months later. Even so, this is below the $25,000 in contract damages that the jury concluded State Auto owed.[4] State Auto refused to pay what it contractually owed for Dally's loss, and the first factor under Biegler is met.

Second, State Auto's refusal to pay was vexatious or without reasonable cause. Although not bound by the finding, this Court "may certainly consider the jury's disposition of a bad faith claim relevant," when deciding if attorney's fees are owed under SDCL § 58-12-3. Tripp, 664 F.3d at 1206. The jury concluded that State Auto acted in bad faith, and facts similarly support finding State Auto's refusal to pay was vexatious or without cause. State Auto's independent

[4] Dally made this Court aware that State Auto made a $100,000 settlement offer shortly before trial in March 2026, which is inadmissible under Rule 408 of the Federal Rules of Evidence and does not impact this analysis. Doc. 88-1 at 2. Because this offer came after the commencement of litigation, it neither precludes an award of attorney's fees, nor is evidence of a vexatious or unreasonable refusal to pay what was owed. See Tripp v. W. Nat'l Mut. Ins., No. CIV. 09-4023, 2010 WL 4791819, at *1 (D.S.D. Nov. 17, 2010), aff'd, 664 F.3d 1200 (8th Cir. 2011).

adjustor Konderla's report indicated extensive hail damage to Dally's roof. After State Auto hired engineer LeTellier due to its discomfort with Konderla's assessment and received LeTellier's report that Dally's roof had sustained some hail damage, State Auto sent Dally a letter asserting that the loss was below his deductible, when in fact it was not, even in State Auto's calculation of the claim amount. See Biegler, 621 N.W.2d at 607 (affirming the lower court's finding of vexatious or unreasonable refusal to pay where the insurance company "did not have a justifiable reason to deny defense of the suit and its actions are undoubtedly of a nature to vex any reasonable person"). This came after Hubbard for State Auto asserted multiple times that LeTellier's report would be the sole decision relied upon for determining the hail damage. See Fiechtner v. Am. W. Ins., 27 N.W.3d 746, 765 (S.D. 2025) (affirming vexatious and unreasonable refusal to pay partially due to the insurer not reviewing all notes available relating to the claim). The jury's note during deliberations, inquiring into the hourly rate for an attorney and whether either side presented evidence on the number of attorney hours spent on the case, indicates that the jury was prepared to award attorney's fees. This Court instructed the jury not to do so of course, but sees in the evidence sufficient reason to find State Auto to have unreasonably refused to pay what it owed under the homeowner policy. The second part of the Biegler test is satisfied.

Under Biegler, this Court must determine "a reasonable charge for the work performed to enforce the insurance contract claim." 621 N.W.2d at 606. This Court has reviewed Dally's request for attorney's fees and agrees that the total of 121.05 hours to handle the contract claim, estimated as half of the total hours Dally's attorney worked on the case, is reasonable. Doc. 88-1 at 9. A reasonable rate for plaintiff's counsel in an insurance coverage dispute in the Sioux Falls market is debatable, but given Plaintiff's counsel's experience, $400 per hour is reasonable, while

$810 per hour is excessive. Thus, this Court awards Dally a total sum of $48,420.00 in attorney's fees.

## III. Motion for Interest on Compensatory Damages

Dally also moved for interest on the jury's award of compensatory damages for the bad faith claim. Doc. 90. This Court instructed the jury in a manner to know that prejudgment interest should run from March 9, 2023, on the $25,000 of contract damages. Dally asks this Court to award prejudgment interest on the $50,000 damages award for pecuniary losses associated with bad faith using the same March 9, 2023, date. Doc. 90-1 at 1. Dally argues that SDCL § 21-1-13.1 applies to jury awards for out-of-pocket pecuniary expenses, and, read together with § 54-3-16, entitles him "to recover prejudgment interest at a set rate of 10%." Id. Dally asserts that the Seventh Amendment and FRCP 49(a) require this Court to "harmonize a jury's special verdict answers and read interrelated findings together to give effect to the causal connections the jury intended," so this Court should find that the $50,000 pecuniary losses were sustained on the same date that Dally sustained his breach of contract damages. Id. at 3–4.

State Auto opposes Dally's motion. State Auto argues that both the verdict form and this Court's partial judgment expressly identify that prejudgment interest was only to be awarded on the breach of contract damages. Doc. 93 at 2–3. State Auto asserts that because Dally did not object to the verdict form before it was submitted to the jury, there was no "jury finding relative to the date of the pecuniary loss on which the plaintiff now seeks interest." Id. State Auto also argues that it is impossible to discern what damages made up the $50,000 pecuniary award and when they were incurred. Id. at 3–6.

South Dakota law provides that "[a]ny person who is entitled to recover damages" is also "entitled to recover interest thereon from the day that the loss or damage occurred." SDCL § 21-

1-13.1 The Supreme Court of South Dakota has held that SDCL § 21-1-13.1 is mandatory and applicable to awards of compensatory damages. Fischer v. Fischer-Olson, 37 N.W.3d 792, 804–05 (S.D. 2026). However, where "there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision. . . If necessary, special interrogatories shall be submitted to the jury." SDCL § 21-1-13.1. The time to object to "any error of commission or omission in the verdict forms" is at the instruction conference before such forms are submitted to the jury. Fischer, 37 N.W.3d at 805 (quoting Grynberg v. Citation Oil & Gas Corp., 573 N.W.2d 493, 503 (S.D. 1997)).

Fischer is analogous to the situation here. In Fischer, the plaintiffs appealed a South Dakota circuit court's denial of prejudgment interest on awards stemming from loan agreements, arguing that the award of prejudgment interest was mandatory under SDCL § 21-1-13.1. Id. at 804. In response, the defendants argued that prejudgment interest was not recoverable because the alleged loans at issue had a 0% interest rate, and that plaintiffs "waived the recovery of prejudgment interest by failing to request an instruction or special interrogatory to the jury to determine the date of the default." Id. Affirming the circuit court, the Supreme Court of South Dakota noted that "[t]he parties presented disputed testimony regarding all aspects of the loans . . . Thus, there were questions of fact as to when the loss or damage occurred, and the jury was never asked to determine the date of the breach." Id. at 805. The Court further observed that plaintiffs had failed to "request a jury instruction on prejudgment interest...propose special interrogatories in the verdict form[,] or object to the lack of a special interrogatory on prejudgment interest when settling instructions." Id. Under these circumstances, the Court held that plaintiff's "failure to request a jury instruction or interrogatory for prejudgment interest waived the prejudgment interest claim." Id.

Here, the verdict form directed the jury to first decide whether State Auto breached the insurance contract and, if so, the amount of and date upon which Dally sustained damages from that breach. Doc. 76 at 19. If the jury found that State Auto breached the insurance contract, the verdict form next asked the jury to decide whether State Auto committed bad faith. Id. at 20. If the jury decided that State Auto committed bad faith, the jury was directed to determine what damages Dally had shown (other than contract damages) for pecuniary loss and for mental and emotional damages. Id. The verdict form described pecuniary loss as "including any out-of-pocket expenses and any other monetary harm, that Dally incurred as a result of State Auto's bad faith conduct beyond what [the jury] awarded for the breach of contract." Id. The verdict form did not have the jury specify what injuries these damages represented, nor the dates such damages were sustained. See id.

Neither party objected to the verdict form. Dally, at that point, waived his claim for prejudgment interest on pecuniary loss related to the bad faith verdict; after all, such damages involved questions of fact for the jury both on what was included and when they were incurred. Fischer, 37 N.W.3d at 805; see also Alvine v. Mercedes-Benz of N. Am., 620 N.W.2d 608, 614 (S.D. 2001) (holding that the plaintiff "will not now be heard" on a motion for a new trial for failure to grant prejudgment interest where the jury "instruction was given with the concurrence of [the plaintiff] and no special interrogatories were submitted to the jury"). Even reading the verdict form harmoniously, the $50,000 damages for pecuniary loss[5] cannot be definitively linked to March 9, 2023, the date for breach of contract, nor any other specific undisputed date. Cf Clay

[5] This Court can only ponder what the jury had in mind for pecuniary loss on the bad faith claim, perhaps Dally's time and effort in spot repairs on his roof or dealing with State Auto's bad faith claims handling, and perhaps costs associated with Anderson and Schlinke being hired, or something else. This uncertainty alone makes it inapt to select March 9, 2023, or any other date from which interest would run.

Rural Water Sys., Inc. v. One Call Sys., Inc., No. CIV. 98-4231, 2001 WL 36142171, at *1 (D.S.D. Sept. 26, 2001) ("[T]he moving parties' failure to request a jury instruction on prejudgment interest does not preclude an award of prejudgment interest because *no question of fact exists* as to the amount of damages or the date the loss or damage occurred, which would necessitate a jury determination." (emphasis added)). Thus, Dally is not entitled to prejudgment interest on the $50,000 pecuniary damages award.

## IV. Conclusion

For the reasons explained above, it is hereby

ORDERED that Plaintiff's Motion for Attorney's Fees, Doc. 88, is granted in part, and Plaintiff is entitled to judgment against State Auto for $48,420.00 in attorney's fees. It is further

ORDERED that Plaintiff's Motion for Interest on Compensatory Damages, Doc. 90, is denied except as to the $25,000 compensatory damages award for breach of contract.

DATED this 7th day of October, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE